IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELLA STALLWORTH,                    :
                                    :
       Plaintiff,                   :
                                    :
v.                                  :        CIVIL ACTION 08-0002-M
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of                     :
Social Security,                    :
                                    :
       Defendant.                   :


<u>MEMORANDUM OPINION AND ORDER</u>

     In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks
judicial review of an adverse social security ruling which denied
a claim for Supplemental Security Income (hereinafter *SSI*) (Docs.
1, 16).  The parties filed written consent and this action has
been referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with 28
U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22).  Oral argument
was waived in this action (Doc. 20).  Upon consideration of the
administrative record and the memoranda of the parties, it is
**ORDERED** that the decision of the Commissioner be **AFFIRMED** and
that this action be **DISMISSED**.

     This Court is not free to reweigh the evidence or substitute
its judgment for that of the Secretary of Health and Human Ser-
vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence.  *Richard-son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-one years old, had completed a ninth-grade education (Tr. 279), and had no relevant previous work experience (*see* Tr. 15-16).  In claiming benefits, Plaintiff alleges disability due to a stroke with both physical and mental residual effects, anxiety, and depression (Doc. 16).

The Plaintiff filed a protective application for SSI on October 1, 2004 (Tr. 49-52).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Stallworth could perform a full range of sedentary work (Tr. 12-22).  Plaintiff requested review of the hearing decision (Tr. 11) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Stallworth alleges that:  (1) The ALJ improperly determined that she did not have a severe mental impairment and that the weakness on her left side was not severe; (2) the ALJ improperly determined that she

2

could perform a full range of sedentary work; (3) the ALJ should have called a vocational expert (hereinafter *VE*) to testify as to her ability to work (Doc. 16).  Defendant has responded to—and denies—these claims (Doc. 17).  The medical evidence of record follows.

The Court first notes that Plaintiff submitted certain evidence to the Appeals Council which was not seen by the ALJ (*see* Tr. 256-69).  Plaintiff has cited some of this evidence in making her arguments to this Court.  Defendant has made no argument whatsoever regarding whether this Court should consider it (*see* Doc. 17).  As such, and in consideration of existing Eleventh Circuit law, the Court will summarize and consider that evidence along with all other evidence of record.  *See Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous").

On March 9, 2003, Stallworth went to the Monroe County Hospital Emergency Room for what was determined to be a brain-stem stroke (Tr. 78-94).  Plaintiff was transferred to USA Knollwood Park Hospital where she remained hospitalized through March 16 (Tr. 95-129).  Although a brain MRA was within normal limits, there was "significant clumsiness of the left hand and

the left leg" (Tr. 96).  There was also a notation of adduction problems in both eyes as well as abduction inability in the left eye (Tr. 100).  Stallworth was given a course of anti-coagulation medications and was discharged in fair condition, placed on a special diet, and instructed how to recognize stroke symptoms.

Plaintiff went to the Monroe County Hospital Emergency Room on four occasions between April 20, 2003 and July 12, 2004 and was treated for complaints of a headache, restlessness (Tr. 130-37), palpitations (Tr. 138-54), dizziness (Tr. 159-68), and she underwent a routine mammogram (Tr. 155-58).

Medical records were provided by Stallworth's treating physician, Dr. A. R. Boroughs, IV, a family practitioner, for the period following her stroke hospitalization through September 28, 2004 (Tr. 169-77, 205).  On her initial visit, the doctor noted that although she had hypertension, she was in no acute distress (Tr. 177).  A month later, Plaintiff stated that she was doing well and denied any complaints; the doctor noted that another physician was treating her for anxiety with Xanax,[1] though he was going to switch her to Trazodone[2] (Tr. 176).  On June 16, 2003, Dr. Boroughs noted that Stallworth still had some left-sided weakness, but that it was improving (Tr. 175).  On July 17, the

---

[1]*Xanax* is a class four narcotic used for the management of anxiety disorders.  *Physician's Desk Reference* 2294 (52nd ed. 1998).

[2]*Trazodone* is used for the treatment of depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).

doctor noted that Plaintiff was doing well, that her blood pressure was down, and that her anxiety was controlled (Tr. 174). The next month's check-up was, essentially, the same though she was suffering from sinusitis and bronchitis. *Id.* Plaintiff was doing well, with no problems at the time of the next examination, on January 15, 2004 (Tr. 173). Stallworth's next three visits were all good with no noted problems (Tr. 169-72); at the last of those examinations, on September 27, 2004, Dr. Boroughs noted that Plaintiff was obese and needed both diet and exercise (Tr. 169).

A consultative examination was performed on February 22, 2005 by Psychologist Nina E. Tocci who noted that Plaintiff had "poor eye contact, angry facial expressions, and a hostile attitude toward the examiner" (Tr. 180; *see generally* Tr. 179-81). The Psychologist recorded the following: Plaintiff was oriented to time, place, person, and situation; she had a poor fund of information and limited comprehension; she demonstrated thought content appropriate to mood and circumstances and a goal-directed thought organization but had little insight into her behavior and only fair social judgment. Tocci expressed the opinion that she was functioning within the mentally retarded range of intellectual ability and said that her prognosis was poor. In summary, the Psychologist stated the following:

The mental status examination revealed a

>40-year-old woman in some distress.  Mrs.
>Stallworth made it clear that the interview
>was difficult and that she was not up to the
>task.  She pouted, offered angry responses,
>and was not able to recall simple
>information, such as her age.  She admitted
>experiencing left-side hemi-paresis.  She
>would have difficulty learning new tasks,
>recalling previously learned tasks, and
>completing tasks in an efficient and timely
>manner.  The medical evidence of record
>provided by DDS was reviewed and those
>findings were considered in the overall
>assessment of the claimant.

(Tr. 181).

A second psychological evaluation was completed on March 20, 2005 by W. G. Brantley who diagnosed Stallworth to be malingering (Tr. 182-85).  His notes stated that although "she reportedly had a stroke and hemiparesis of her left side, there was no lid lag of her left eye or drooping of the left side of her mouth.  When she dropped her sack of pills, she bent over and picked them up with two fingers with her left hand" (Tr. 183).  The Psychologist found no sensory impairment and noted that her cognition was consistent with Borderline Intellectual Functioning.  Brantley found no impairments with regard to immediate, recent, and remote memory or with understanding and concentration.  Thought content, judgment, and insight were normal.  The Wechsler Memory Scale, Form III and WAIS-III were administered, but Stallworth engaged in "Blatant Malingering and purposeful failure" (Tr. 185).  The Psychologist's prognosis was as follows:  "She looks to be

stable.  I think she is not interested in working, and I think
she is interested in drawing a check for the rest of her life"
(Tr. 185).

A consultative physical examination was performed by Dr.
Stephen M. West, a family practitioner, who noted that
Plaintiff's musculoskeletal grip strength was 5/5 on the right
and 4-5/5 on the left (Tr. 186-87, 204).  Though there was full
strength in flexion and extension of the right elbow, the left
elbow was slightly weaker; this slight weakness on the left was
also demonstrated in the following:  flexion, extension,
abduction, and adduction of the shoulders; plantar flexion and
dorsiflexion; and flexion, extension, abduction, and adduction of
the hips.  Dr. West noted that Stallworth walked with a slight
limp on the left and walked with a cane.  The doctor's assessment
was hypertension and a "[h]istory of right sided cerebrovascular
accident infarct with left sided residual weakness" (Tr. 187).
West further stated that he did not "think the patient will ever
be gainfully employed again with her residual symptoms" (*id.*).
The doctor reviewed the medical information which had been
supplied to him and considered it in reaching his opinion.

Dr. Boroughs examined Plaintiff again on February 23, 2005
and found her to be in no acute distress; she had been having
tension headaches, but they had improved (Tr. 213).  Anxiety was
improved with medication and hypertension was under control.  On

May 9, Stallworth complained of dizziness for which the doctor prescribed Antivert, noting possible labrynthitis; Boroughs also noted left-sided weakness (Tr. 212).   On August 16, 2005, Plaintiff complained of ear pain and dizziness as well as left hip pain; Dr. Boroughs diagnosed serous ottis media and prescribed Naprosyn[3] for her hip pain (Tr. 210).   Plaintiff was next examined on March 16, 2006, and complained of occasional foot pain; the doctor noted a normal examination and continued her medications (Tr. 211).   On April 26, the doctor noted edema and ottis externa on the left, but that Stallworth's hypertension was in good control (Tr. 208).   On June 6, 2006, Dr. Boroughs completed a clinical assessment of pain which indicated that Stallworth had pain but that it did not prevent functioning; he further stated that physical activity would greatly increase her pain and would distract her from tasks (Tr. 206).   The doctor stated that pain medications would cause some side effects, but would be only mildly troublesome; he stated that she had pain in her left hip with prolonged sitting or standing, but that she was not on very much pain medication.   *Id.*

Records from four different emergency room visits at Monroe County Hospital, dating from March 22, 2005 through May 30, 2006,

---

[3]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.   *Physician's Desk Reference* 2458 (52nd ed. 1998).

revealed, among other things, clinical findings of bursitis and arthritis as well as left hip pain for which she was directed to take motrin and prescribed celebrex[4] (Tr. 219-51).

On September 29, 2006, Plaintiff was seen at Regional Women's Healthcare by Dr. G. E. "Jeff" Fahy, III who found her to have Menometrorrhagia for which he scheduled Novasure endometrial ablation (Tr. 256-58).

Records from Monroe County Hospital, dated December 21, 2006, show that Stallworth was seen for anxiety for which she was given a shot of Ativan[5] (Tr. 259-63).

Dr. Boroughs submitted additional office notes which demonstrate that he examined Plaintiff on four more occasions, spanning June 6 through December 29, 2006 (Tr. 264-69). Following the first visit, the doctor noted weakness and decreased grip strength on the left side as well as edema; he opined that he did not think that Stallworth was capable of working (Tr. 264). Though Plaintiff had complaints of right hand soreness and left-sided headaches, Dr. Boroughs noted that she was in no acute distress on each visit; he noted hyperglycemia on

---

[4]*Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

[5]"*Ativan* (lorazepam) is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms." Its use is not recommended "in patients with a primary depressive disorder or psychosis." *Physician's Desk Reference* 2516-17 (48th ed. 1994).

one visit.  On October 13, 2006, the doctor wrote a "To Whom It May Concern" letter in which he stated that she has been "unable to be gainfully employed [since her stroke] due to weakness and neurological abnormalities;" the doctor further stated that she had developed severe anxiety and depression which inhibit her from being gainfully employed (Tr. 267).

At the hearing, Plaintiff testified that she has trouble reading with her left eye and that she walks with a cane as a result of the stroke (Tr. 278-80; *see generally* Tr. 278-92). Stallworth testified that she could mostly take care of her personal needs, though she sometimes needed help bathing and putting on her pants as she had a hard time lifting her left leg (Tr. 283-84).  She stated that her whole left side was weak (Tr. 285, 290) and that her memory is not as good as it was (Tr. 287). Plaintiff is depressed and anemic (Tr. 289-90).  Stallworth said that she could not walk for ten minutes and that she has to lie down for 30-45 minutes every day twice a day (Tr. 291-92).  This concludes the Court's summarization of the medical evidence.

The ALJ, in his decision, summarized the medical evidence and discounted the opinions of Psychologist Tocci, finding "no support whatsoever" for it (Tr. 18).  He did credit the opinion of Psychologist Brantley and, with these conclusions, he found that Plaintiff did not have a severe mental impairment (Tr. 18). The ALJ also discounted the opinions of Dr. West, finding that

they relied on Stallworth's subjective complaints and were
disputed by the other evidence of record (Tr. 19).  The ALJ
rejected Dr. Borough's conclusion that Plaintiff's pain would
preclude her from working, finding that his own treatment notes
failed to support such a conclusion (*id.*).  He also discredited
Plaintiff's testimony of limitation as unsupported by the medical
evidence of record (Tr. 21).  The ALJ went on to find that
Stallworth could perform a full range of sedentary work (Tr. 19),
and, relying on the Grid, determined that she was not disabled
(Tr. 20).

Plaintiff first claims that the ALJ improperly determined
that she did not have a severe mental impairment and that the
weakness on her left side was not severe (Doc. 16, pp. 10-12).
In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the
Eleventh Circuit Court of Appeals held that "[a]n impairment can
be considered as not severe only if it is a slight abnormality
which has such a minimal effect on the individual that it would
not be expected to interfere with the individual's ability to
work, irrespective of age, education, or work experience." *Brady
v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*,
768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a)
(2008).[6]  The Eleventh Circuit Court of Appeals has gone on to

---

[6]"An impairment or combination of impairments is not severe if it
does not significantly limit your physical or mental ability to do
basic work activities."

say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

The Court finds substantial support for the ALJ's conclusions regarding this claim.  Though there is medical evidence regarding Plaintiff's left-sided weakness, the only evidence which quantifies it comes from Dr. West who consistently indicated that Plaintiff's strength and movement, on the left side, were 4-5 on a scale of 5 throughout her body (Tr. 186-87). These findings undermine Dr. West's conclusion of disability, as found by the ALJ and agreed with by the Court.  The only evidence of severe limitation on the left side was Stallworth's testimony, which was found to be non-credible by the ALJ; Plaintiff has not challenged this finding.

As to Plaintiff's mental impairment, Psychologist Brantley indicated that Plaintiff was clearly a malingerer.  Though he also found that she was functioning at a borderline range of intelligence, the Court is unaware of—and Stallworth has failed

to demonstrate—any relevant legal authority which holds that this condition, alone, is the basis for a finding of a severe impairment.  As such authority has not been asserted, the Court further finds that Plaintiff has failed to demonstrate that her diminished mental ability would interfere with her ability to work.  *McCruter v. Bowen*, 791 F.2d at 1547.  The Court makes this finding with regard to Stallworth's assertion that her anxiety is severe as well; the notes of Dr. Boroughs belie this assertion. Plaintiff's assertion of depression as a severe impairment is not well-founded either as it has not been shown to diminish her ability to work and is of recent origin.  *See* 20 C.F.R. § 404.1505(a) (2008) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").  Stallworth's claim that the ALJ improperly determined that she did not have certain severe impairments is without merit.

Plaintiff next claims that the ALJ improperly determined that she could perform a full range of sedentary work.  The Court notes the following:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which

> involves sitting, a certain amount of walking
> and standing is often necessary in carrying
> out job duties.  Jobs are sedentary if
> walking and standing are required
> occasionally and other sedentary criteria are
> met.

20 C.F.R. § 404.1567(a) (2008).  The physical examination of Dr.

West support the ALJ's conclusion that Plaintiff is capable of

performing this type of work; the treatment notes of Dr. Boroughs

fail to dispute it.  Stallworth's claim otherwise is without

merit.

     Plaintiff's final claim is that the ALJ should have called a

VE to testify as to her ability to work (Doc. 16, pp. 13-14).

Stallworth has questioned the ALJ's reliance on the Grid in

determining that there are jobs which she can perform in the

national economy.  The main thrust of this argument is that she

has nonexertional limitations (left-side weakness and borderline

intellectual functioning) which preclude the use of the Grid.

     The Eleventh Circuit Court of Appeals has held that the

"grids should not be applied when the variables used did not take

into account the claimant's particular limitations." *McRoberts*

*v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (*citing Gibson v.*

*Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985)).  In *Wolfe v.*

*Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996), the Court stated

that "[t]he ALJ should not rely exclusively on the grids when the

claimant has a nonexertional impairment that significantly limits

14

his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion." Rather, the grid should be used as a "framework to evaluate vocational factors" along with other "independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy." *Wolfe*, 86 F.3d at 1077.

The Court has already found that Plaintiff's claim regarding the ALJ's finding of certain non-severe impairments was without merit. This claim, too, lacks merit as it is based on the same underlying premise, *i.e.*, that her left-sided weakness and borderline intellectual functioning severely diminish her ability to work. The Court found, however, that the ALJ's conclusions regarding these impairments were supported by substantial evidence. Additionally, the Court finds that the ALJ used variables properly accounting for Stallworth's limitations in determining that Rule 201.24[7] directed a finding of non-disability (Tr. 19). *See McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (*citing Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985)). The Grid recognizes that the coincidence of all variables comprising a particular rule establishes the existence of jobs which the claimant can perform. 20 C.F.R. Part 404, Subpart P, Appendix 2, Listing 200.00(b) (2008). This claim

---

[7]Rule 201.24 contemplates a young claimant with limited education and no previous work experience who can perform a full range of sedentary work.

is of no merit.

In summary, Plaintiff has raised three different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be dismissed.  Judgment will be entered by separate Order.

DONE this 1st day of August, 2008.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE